[No. 12083.   In Bank.— June 10, 1890.]

## ALBION RIVER RAILROAD COMPANY, Respondent, *v.* WILLIAM HESSER, Appellant.

| 84 | 435 |
|----|-----|
| 86 | 248 |
| 84 | 435 |
| 108 | 210 |

Eminent Domain — Right of Way for Railroad — Just Compensation — Improvements by Trespasser — Bona Fide Intent to Condemn. — Where a railroad company, prior to the commencement of proceedings to condemn a right of way for its road, but with the *bona fide* intent to commence such proceedings, enters upon land and erects structures thereon for the use of its road, it is not required, in making just compensation for the right of way in the subsequent condemnation proceedings, to pay the land-owner for the structures so erected.

Appeal from a judgment of the Superior Court of Monterey County, and from an order denying a new trial.

The facts are stated in the opinion.

*J. M. Mannon, Thomas B. Bond,* and *C. C. Hamilton,* for Appellant.

*T. L. Carothers,* and *Carothers & Wheeler,* for Respondent.

Foote, C.— This action was instituted for the purpose of condemning to the public use a right of way for the plaintiff's railway track over a portion of the defendant's land.

Judgment of condemnation followed, as prayed for, and the damages were assessed against the plaintiff in the sum of $175, as a *just* compensation for the property sought to be condemned, and as damages consequent to such condemnation.

The defendant appeals from the judgment, and order denying a new trial. The contention of the appellant is, that the court erred in failing and refusing to make and give judgment in his behalf for eight thousand five hundred dollars more than was awarded him. The ground upon which this claim is advanced is, that the railroad

corporation entered upon the land of the appellant before any condemnation proceedings had been commenced, and erected thereon a bridge and railroad track, which had become permanently attached and affixed to the soil, which was of the value of eight thousand five hundred dollars. And such being the fact, the defendant became the owner of these fixtures or permanent improvements upon his land, placed there by plaintiff as trespassers, and, as a consequence, was entitled to have their value allowed to him as a part of his just compensation.

The evidence shows that the corporation, at the time of its entry upon the land and the building of the bridge and track thereon, did not know positively who owned the land, nor did the defendant know that it was his land that was being thus intruded upon until he got the field-notes of it from San Francisco.

While the entry of the plaintiff may have been, technically, a trespass, it was not the act of a mere *tort-feasor*. It is therefore to be determined whether the bridge and track, placed upon the land, under such circumstances, with the evident intention, in good faith, to put in operation the constitutional right to condemn, for the public use, the right of way over the land, is such an act as operates as a dedication, in law, of the materials or structures of the railroad placed upon the land to the owner of the land, so as to entitle him to include them in the assessment of his damages as a *just* compensation for the condemnation of the right of way over his land.

In the case of *Cal. P. R. R. Co.* v. *Armstrong*, 46 Cal. 85–90, the appellate court said: " The argument on behalf of defendant on the first point is, that the plaintiffs, in constructing the railroad track, were trespassers, and that the track, being attached to the soil, became a part of the realty, and belonged to the owner of the land. Hence he claims that its value ought to be included in the estimate of damages, in like manner as though the defendant himself had built the road. But this proposi-

tion cannot be maintained.   Neither the constitution
nor the statute contemplates that a person whose land is
taken in the exercise of the right of eminent domain
shall be entitled to anything beyond a 'just compensa-
tion.'   He is to be paid the damage he actually suffers,
and nothing more.   But to hold that, in addition to the
fair value of the land taken, and such other damages as
he may suffer by severing it from the remainder of his
tract, he shall also recover the value of a railroad track,
in the construction of which he never expended a dollar,
and which was built by the plaintiffs at their own ex-
pense, would be to defeat the obvious intent of the stat-
ute by an overtechnical construction of it."

Again, the supreme court of Pennsylvania, in the case
of *Justice* v. *N. V. R. R. Co.*, 87 Pa. St. 28–33, has said:
" The very intent of an appropriation of land is to place
upon it and own and use the structures necessary to
carry out the charter purpose.   Hence no dedication of
the material can be inferred in such a case.   In this we
perceive how differently the common law itself must view
the application of its own rules.   The great merit of the
common law, so often commended by jurists, is its plas-
ticity as a system of principles, and not merely of rigid
rules, which can be adapted to new conditions in the
affairs of men.   Modern inventions and discoveries have
so far transcended the conditions of former times that
to apply the rule as to a mere trespasser, whose entry is a
*tort* pure and simple, to the case of one authorized to enter
for a great public purpose, merely because of an irregu-
larity in the manner of proceeding, would be as vain as to
attempt to dress a full-grown man in the garb of his child-
hood.   This is not the case of a mere trespass by one hav-
ing no authority to enter, but of one representing the state
herself, clothed with the power of eminent domain, hav-
ing a right to enter and to place these materials on the
land taken for a public use,— materials essential to the
very purpose which the state has declared in the grant

of the charter. It is true, the entry was a trespass by
reason of the omission to do an act required for the se-
curity of the citizen, to wit, to make compensation or
give security for it. For this injury the citizen is en-
titled to redress. But his redress cannot extend beyond
his injury. It cannot extend to taking the personal
chattels of the railroad company. They are not his, and
cannot increase his remedy. The injury was to what
the land-holder had himself, not to what he had not.
Then why should the materials laid down for the benefit
of the public be treated as dedicated to him? In the
case of a common trespasser, the owner of the land may
take and keep his structures, *nolens volens;* but not so in
this case, for though the original entry was a trespass, it
is well settled that the company can proceed in due course
of law to appropriate the land, and consequently to re-
claim and avail itself of the structures laid thereon.
(*Harrisburg* v. *Crangle*, 3 Watts & S. 460; *McClinton* v.
*Railroad Co.*, 16 P. F. Smith, 409; *Railroad Co.* v. *Burson*,
11 P. F. Smith, 379.)"

In Illinois it is said, in the case of *Chicago etc. R. R.
Co.* v. *Goodwin*, 111 Ill. 202, 53 Am. Rep. 622, 623: "Even
if the entry had been without license or permission of
any one authorized to grant the same, so that it was a
trespass at the time, the law would not require the rail-
road company, in seeking a condemnation of the lands
so entered upon for a right of way, to pay the owner of
the land for structures placed upon it at its own expense,
with the view of subsequently acquiring the right of way."
(Citing numerous cases.)

In a case entitled *Cohen* v. *St. L. F. S. & W. R. R.
Co.*, 34 Kan. 158–167, 55 Am. Rep. 242, it is said: "It has
even been held that where a railroad company enters
upon land as a technical trespasser, and afterward pro-
cures the land for its right of way by condemnation pro-
ceedings, it is not compelled to pay for the improvements
which it itself made upon the land while it was techni-

cally a trespasser, and before it legally procured its right of way." (Citing many cases.)

In Oregon the matter has been determined in like manner in the case of *Oregon R'y & Nav. Co.* v. *Mosier,* 14 Or. 519, where it was said: "The object of the proceeding is to award just compensation to the owner of the land. The improvements made by the corporation, and for the use of the road, and necessary for its successful operation, constitute no part of the damage or value of the land. The just compensation is for the injury which he may sustain for the taking of the land. 'When this is afforded the purposes of right and the constitution are satisfied. It is not intended that the compensation shall extend beyond the loss and injury, including that which the land-owner had not when the property was taken, but which is an incident of the appropriation, and essential to the uses for which the law confers the right of taking the property.' (*Jones* v. *Railway Co., supra; Railroad Co.* v. *Booram,* 28 N. J. Eq. 450.)"

The views thus expressed in the authorities cited are well sustained by Brickell, J., in the Alabama case, *supra.*

It is true that the appellant contends that the appellate court of California, in the case of *United States* v. *Land in Monterey County,* 47 Cal. 515–517, has reversed the case in 46 Cal., cited heretofore, but an examination of the cases does not bear out the assertion. For the court in the later opinion says: "The law did not authorize the United States to take possession of these lands *manu forti,* and their agents, in entering upon them and ejecting the defendants, were *mere tort-feasors.* The case is in this important respect wholly unlike that of *California Pacific Railroad Company* v. *Armstrong,* 46 Cal. 85."

The Armstrong case was one where the land was entered upon and the structures erected pending condemnation proceedings, *but they were dismissed.* These

condemnation proceedings were again initiated, and the defendant's claim for the value of the corporation's improvements, made before the institution of the last proceedings, was disallowed, the court putting its ruling upon the ground that the structures were erected while the corporation was in possession. The first condemnation proceedings, then pending, were afterward dismissed.

Although not altogether clearly expressed, we gather that the court thought the circumstances in the one case evinced the disposition in good faith to condemn and pay a *just compensation*, and the other an entry by the *strong* hand with no such intention.

If we are wrong in this conclusion as to the distinction drawn, and it is as contended, that the two cases are irreconcilable, then we think, both upon reason and authority, the case in 47 Cal. should be declared overruled and the case in 46 Cal. approved.

Under the facts in this case, we do not think the rule of *just compensation* for condemned property would be subserved by holding that the defendant should make the plaintiff pay eight thousand five hundred dollars, which the plaintiff expended in good faith to establish a public use, and when the defendant expended not one dollar, and at the time of the construction of the track and bridges did not know that they were being built on his land. To do this would be to pay the defendant for that which he never had, and which the plaintiff, in putting it upon the appellant's land, had no intention, as a *tort-feasor*, to place there. All the injury the defendant suffered can be paid for, without giving him a large sum of money for injury he never suffered.

We therefore advise that the judgment and order be affirmed.

BELCHER, C. C., and VANCLIEF, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.