THE ST. LOUIS, KANSAS & SOUTHWESTERN RAILROAD COMPANY v. J. W. NYCE AND THE STOCK EXCHANGE BANK OF CALDWELL, KANSAS.

No. 10,979.    (59 Pac. 1040.)

1. RAILROADS— *Condemnation Proceedings after Foreclosure— Measure of Damages.* A railroad company obtained deeds from an owner of mortgaged land for a right of way across the same, and immediately constructed its road-bed, bridges, main line, and side-tracks, together with a station-house, thereon. Thereafter an action was commenced by the mortgagee to foreclose his lien upon the real estate, in which suit the railroad company was made a party. It answered, setting up its deeds to the right of way, and averring that it was in possession of the strip of land by virtue of said conveyances from the owner. A decree was entered, ordering a sale of the mortgaged property and adjudging that the mortgage was a senior and paramount lien upon the land, including the right of way of the railroad company. A sale was ordered first of the land not embraced in the right of way, and should that prove insufficient to satisfy the mortgage claim, then of the strip included in the right-of-way deeds. The mortgagee bid in both tracts at less than his judgment, and received a sheriff's deed. The railroad company thereupon made application to the district judge for the appointment of commissioners to condemn the right of way then in use over and across the land, and they were appointed. *Held*, that, on the trial of an appeal from their award, the purchaser at the sheriff's sale could not recover the value of the improvements placed upon the land by the railroad company, and that the same did not pass by the sheriff's deed as part of the real estate.

2. ———— *Case Overruled.* The case of *Briggs v. C. K. & W. Rld. Co.*, 56 Kan. 526, 43 Pac. 1131, overruled.

Railroad Co. v. Nyce.

3. ———— *Damages to Adjacent Land.* Such purchaser at a foreclosure sale cannot recover damages caused to that part of the land outside the right of way by reason of the construction or operation of the railroad.

4. ———— *Improvements not a Part of the Realty.* Improvements placed upon real estate by a railroad company, necessary to the operation of the road, are to be regarded as trade fixtures and not accessories of the land to which they are attached.

5. ———— *Public Agency—Effect of Sheriff's Sale.* A railway corporation is in one sense a public agency. It possesses the sovereign power of eminent domain conferred by reason of the benefits derived by the people of the state from the operation of the road. To permit a part of its road-bed and track to pass by sheriff's sale to an individual, with absolute dominion and ownership in the purchaser, would destroy it as an instrument of commerce, take away all power of regulation or control by the state, and divert it from the purposes for which it was built.

Error from Sumner district court ; J. A. BURNETTE, judge. Opinion filed February 10, 1900. Modified.

STATEMENT.

IN March, 1886, Alexander Blackstone and wife executed to the Stock Exchange Bank a mortgage on a half-section of land to secure a note for about $4500, given to the bank by Charles Blackstone, Alexander Blackstone, and William Corzine. The mortgage was duly recorded. On November 4 following Alexander Blackstone and wife sold to the St. Louis, Kansas & Southwestern Railroad Company a strip of land 100 feet wide through said premises, and executed to the latter a warranty deed for the same, which was recorded December 14, 1886. Afterward, in April, 1887, the railroad company acquired, by another warranty deed from Blackstone and wife, an additional right of way over said real estate, which last deed was recorded July 1, 1887. Immediately after acquiring said right of way and property by virtue of the two warranty deeds above mentioned, the railroad company

constructed its track, road-bed, bridges, main line and side-tracks, and also built and constructed a depot and station-house upon the land so granted.

In October, 1887, an action was commenced by the Stock Exchange Bank to recover on the note and to foreclose the mortgage executed to it by Alexander Blackstone and wife. Both the St. Louis, Kansas & Southwestern Railroad Company and the St. Louis & San Francisco Railway Company (which was then operating the road) were made parties defendant to the suit. The San Francisco company filed an answer therein, setting up the deeds to said right of way. In May, 1888, a personal judgment was rendered against Charles and Alexander Blackstone and William Corzine in favor of the bank for the amount due on the note, and a decree entered for the sale of the property covered by the mortgage at the expiration of six months, without appraisement. The cause was then continued as to the railway company. In December, 1889, the case came on for further hearing between the plaintiff bank and the railway company. It was then decreed that the mortgage of the bank was a senior and paramount lien on all of said real estate, including the right of way of the railroad companies, but ordering that upon the sale of the property mortgaged the land not embraced in the right of way be first sold and exhausted to satisfy the mortgagee's claim; and, in the event said sale should prove insufficient for that purpose, then that the right of way be sold, and barring the title and interest of the railroad companies in the property after such sale. On July 8, 1895, pursuant to the decree, the sheriff sold all of that portion of the land not embraced and included in the right of way to John W. Nyce for $1000, and thereupon sold the right of way to John W. Nyce

for $500.   The sale was confirmed July 10 thereafter, and a sheriff's deed ordered.

On July 27, 1895, the St. Louis, Kansas & Southwestern Railroad Company made application to the district judge for the appointment of commissioners to condemn a right of way over and across said premises.   Commissioners were appointed and qualified, and on December 3 filed their report allowing damages to the land not taken $383.67, and value of land taken, $246 ; making a total of $629.67.   In the commissioners' report the owner is given as unknown. On September 13, 1895, John W. Nyce and the Stock Exchange Bank, claiming to be the owners of all of said tract of land, filed an appeal bond, and a transcript of the record was transmitted to the district court.   Thereafter, in November, Nyce and the bank filed a petition in the district court against the railroad company, wherein they alleged that they were the owners of the land, setting forth the condemnation proceedings, and claiming damages in the sum of $9000, consisting of the following items :

1 station-house or depot, of the value of.................. $1,000 00
1700 feet of side-track, laid upon grade, consisting of
   wooden ties and steel rails, and the necessary switch
   and appliances, of the value of........................   2,000 00
A mile of main track built and laid upon a grade, consist-
   ing of wooden ties and steel rails, of the value of ......   6,000 00

The defendant below, the St. Louis, Kansas & Southwestern Railroad Company, filed an answer setting up its ownership of the land conveyed to it for right of way in the deeds from Blackstone and wife heretofore mentioned, and the erection of improvements thereon by the railroad company, and the continuous occupation and use of the same thereafter for railroad purposes.   Upon the trial, the jury were instructed that the plaintiffs, Nyce and the bank, had a right to recover the value of the improvements placed upon the

land by the railroad company in addition to the value of the land taken, as well as damages to the land not taken, and plaintiffs below recovered a verdict against the company for the sum of $4851.17, upon which judgment was entered in their favor. In this amount $500 was included for depreciation in the value of the land not occupied by the railroad, by reason of the maintenance and operation of the same over and across the half-section mentioned.

*Rossington, Smith & Histed*, for plaintiff in error.*

*James Lawrence*, and *W. W. Schwinn*, for defendants in error.

The opinion of the court was delivered by

SMITH, J.: We will consider but two of the questions discussed by counsel for plaintiff in error in their brief and argument, viz.:

1. In estimating the amount of damages which the plaintiffs below were entitled to recover under the condemnation proceedings, can the value of the improvements put upon the land by the railroad company be taken into consideration?

2. Can the plaintiffs below recover damages to the land outside the right of way of the railroad company by reason of the construction and operation of the road, the right of way and the land adjacent to it having been sold in separate tracts under the decree of foreclosure and bid in by them at sheriff's sale long after the construction of the road?

As the defendants in error, Nyce and the Stock Exchange Bank, appealed from the award made by the

*By courtesy of counsel and leave of court, M. A. Low and W. F. Evans, attorneys for the Chicago, Rock Island & Pacific Railway Company, submitted a brief in support of the propositions of law contended for by plaintiff in error.—REP.

commissioners in condemnation, we will treat them, in the discussion of this case, as the owners of the property, although it appears from the record that Nyce alone purchased the property at the sheriff's sale.

If the road-bed, ties, track, etc., placed upon the property by the railroad company are to be treated, under the circumstances of this case, as part of the real estate, then the position taken by the defendants in error on the first proposition (which was concurred in by the trial court) is the correct one ; otherwise not. It becomes necessary, therefore, to consider in the outset the nature of the improvements placed upon the land by the railroad company, and their character as affected by the relations sustained toward the public by such companies.

From early times it has been held that buildings adopted and used for the purposes of trade are recognized as an exception from the general rule which obtains as to buildings constructed for other purposes, in that the former do not become a part

1, 4. Improvements not a part of the realty. of the real estate when affixed thereto from the fact of their erection alone.

This doctrine was announced by Lord Ellenborough in 1802, and later by the supreme court of the United States in *Van Ness v. Pacard*, 2 Pet. 137, 7 L. Ed. 374.   In the latter case the improvement was a large house built and used as a family residence, and it was sought to have the question depend upon whether the building was removable or not ; but the court held that the size of the building, whether it had a brick foundation or not, or was one or two stories high, or had a brick chimney, was immaterial, the sole consideration being whether or not it was designed for the purposes of trade.   If so, it was a fixture which

might be severed and removed by the person erecting the same. This distinction was applied in the case of *Wagner v. Cleveland & Toledo Rld. Co.*, 22 Ohio St. 563. Stone piers were built by a railroad company on premises over which it was authorized to construct its road, and the question determined was whether they were so annexed to the land as to become the property of the owner of the land. The court held that the use of the strip of land on which the piers were built was granted to the railroad company for the purpose of constructing a part of a continuous line of railroad which it was authorized to build and operate. The piers were held to be as much a part of the road as the bridge they supported, or the rails or ties. The road was alone adapted to the transportation of persons or property. All its parts were merely accessory for its business, and were put on the land for this purpose and not as accessories to the land over which the road was to pass. That part of the road built on the premises of the party, plaintiff in error in the suit, disconnected from other parts of the road, could not be operated and would be useless as a railroad, nor could it serve any useful purpose as an appurtenance to the land on which it was built. It was said in the opinion :

" The general principle to be kept in view, which underlies all questions of this kind, is the distinction between the business which is carried on in or upon the premises, and the premises, or *locus in quo*. The former is personal in its nature, and articles that are merely accessory to the business, and have been put on the premises for this purpose, and not as accessions to the real estate, retain the personal character of the principal to which they appropriately belong and are subservient. But articles which have been annexed to the premises as accessory to it, whatever business may be carried on upon it, and not pecul-

iarly for the benefit of a present business, which may be of a temporary duration, become subservient to the realty, and acquire and retain its legal character. . . . The railroad company acquired an easement in the land to construct and use its road thereon. It did not l i id itself to the landowner, either to build or maintain the road; and it could change the character of the structure at pleasure. Nor do we perceive any good reason why, in the act of building, it should lose its right of property in the structure when built, or in the materials of which it was composed. The landowner retained his land subject to the easement, and the company owned the easement and the structures it was designed to support."

Again, in *Northern Central Railway Co. v. Canton Co. of Baltimore*, 30 Md. 347, it was held that a railway came within the rule regarding trade fixtures; that it was not an accessory to the enjoyment of the freehold, or in any manner necessary and convenient for the occupation of the land by the party entitled to the inheritance. The court said:

"A railway is certainly quite as essential to the trade and business of a railway company, as a steam-engine and the house which may cover it, or any other fixture can be to the miller or the miner. . . . *Prima facie*, a house with its foundation planted in the soil is real property, yet when it is accessory to trade, and in law a trade fixture, we find all the authorities regard it as personal property. The same doctrine is applicable to the railway in question."

See, also, *Railroad v. Deal*, 90 N. C. 110; *Albion River R. R. Co. v. Hesser*, 44 A. & E. R. C. 125, 84 Cal. 435, 24 Pac. 288; *O. R. & N. Co. v. Mosier*, 14 Ore. 519, 13 Pac. 300; *Jones v. N. O. & S. R. R. Co. and Im. Asso.*, 70 Ala. 227; *Justice v. Nesquehoning Valley Railroad Co.*, 87 Pa. St. 28; *Newgass v. Railway Company*, 54 Ark. 140, 15 S. W. 188. These cases are to the effect that, although a railway company may enter

26—61 KAN.

upon land without right and construct its track thereon, it being possessed with the continuing power of eminent domain and having the right to secure an easement on the land upon which it has laid its track for railroad purposes, the nature of its entry and the manner in which it annexes chattels to the soil distinguish it from the case of an ordinary trespasser making improvements to the freehold.

In the case of *Cohen v. St. L. Ft. S. & W. Rld. Co.*, 34 Kan. 158, 164, 8 Pac. 142, a railroad company had taken possession of a strip of land and constructed its track thereon without any formal condemnation proceedings and without procuring any title thereto or easement therein from the owner of the land. In an action brought by the latter against the railroad company to recover damages for the permanent taking and appropriation of such strip, no recovery was allowed for materials and work furnished by the railroad company itself and used in the construction of its track. In passing on this question the court said :

" This question we think must be answered in the negative. Of course it must be admitted that where a mere wrong-doer, a naked trespasser, enters upon the land of another, and makes improvements thereon of a permanent character, such improvements become the property of the landowner ; and this will apply to railroad companies as well as to others. If a railroad company should enter upon the land of another, without any color of claim of right or privilege, as a mere wrong-doer, a naked trespasser, and construct a railroad-track on such land, such railroad-track would of course become the property of the landowner. . . . But neither the foregoing principles nor the above authorities apply to the present case. The railroad company in the present case was not a wrong-doer nor a trespasser in any sense. It was a duly organized railroad company under the laws of Kansas, and had a right to build its railroad across the plaintiff's land,

provided, of course, that it first procured the right of way from the owner of the land; and it had the right to procure such right of way by condemnation proceedings, as the representative of the sovereign authority, the state of Kansas; for the operation of a railroad is everywhere considered and held to be a public purpose, and the statutes of Kansas authorize such condemnation proceedings. And the railroad company took possession of the land for its right of way and appropriated the same to its own use with the *consent* of the only person who had the possession of the land, and the only person who seemed at the time to be the owner thereof. This person was B. F. Files. He had the unquestioned possession of the land and claimed title thereto, and claimed the land as his own. He had tax deeds on all the land through which the defendant's railroad was constructed. . . . Nor has the plaintiff treated the railroad company as a trespasser. He has allowed the company to retain its right of way, as a permanent easement, and simply sues it for compensation and damages. . . . Under such circumstances, the railroad company will not be required to pay for the improvements which it itself made upon the land, but will be required to pay only the value of the strip of land which it appropriated and the damages to the other land; and this value and these damages will be computed as of the time when the railroad company first took possession of said strip and occupied the same as its right of way. This we think is founded in reason and sustained by the weight of authority. (Citing authorities.)

" It has even been held that where a railroad company enters upon land as a technical trespasser, and afterwards procures the land for its right of way by condemnation proceedings, it is not compelled to pay for the improvements which it itself made upon the land while it was technically a trespasser, and before it legally procured its right of way. (*Justice v. Nesquehoning Valley Railroad Co.*, 87 Pa. St. 28; *Daniels v. The C. I. & N. R. Co.*, 41 Iowa, 52; *Lyon and wife v. The Green Bay & Minnesota Ry. Co.*, 42 Wis. 538; *Greve v. First Div. St. Paul & Pac. R. Co.*, 26 Minn. 66,

1 N. W. 816.) This seems like justice; but whether it is or not, surely where a railroad company enters upon a piece of land for the purpose of constructing a railroad track, and does so under the honest belief that it has a right to do so, and expends thousands of dollars thereon under such belief, and no person objects to its occupancy, or questions its right, while it is expending its money making improvements on the land, and where the paramount owner of the land afterwards treats the railroad company, not as a trespasser upon his land, but as a party which has in fact procured a permanent right of way over the land, and upon such theory sues the railroad company merely for the damages resulting from the permanent taking of the right of way, including the value of the land taken, and the permanent damages to his other property, he cannot say that the railroad company was at any time a mere trespasser; and he can recover only for the value of the land taken, and the damages to that not taken at the time when the railroad company first entered upon his land, and occupied the same for the purpose of procuring a right of way."

In *A. T. & S. F. Rld. Co. v. Morgan*, 42 Kan. 23, 21 Pac. 809, the railroad company dug a well and put in a pump and boiler for the purpose of filling a water-tank on the line of its road, believing that the well and its attachments were upon its own property. When it was discovered that the same were upon the land of another, it was held that the pump and boiler could be removed without paying the owner of the land therefor. The court said:

"It can readily be seen that one of the tests of whether a chattel retains its character or becomes a fixture is the uses to which it is put. . . . If the company had placed it there, even under a mistake, for the purpose of ultimately improving the real estate, the law might under this state of facts have held it to be the property of the owner of the real estate; but under the agreed statement it was placed there solely

for the purpose of better operating its own railroad. . . . We believe in this action, because the improvements did not and were not intended to benefit the realty, that the pump, boiler and building should be held to be personal property and not fixtures.''

In the case at bar the railroad company did not proceed to the laying down of its track and the erection of improvements mentioned until after it had obtained a deed from Blackstone, the owner of the fee in the land.   The mortgage held by the bank conveyed no estate, but was merely a lien.   The mortgagee was in no sense the owner of the property, and in condemnation proceedings no personal notice was required to be served on him, nor needed he be named in the award.   If condemnation had been had before the foreclosure, his rights as mortgagee would have received no consideration, and the value of the ties, track, etc., would have been wholly excluded from the amount of the award.   (*C. K. & W. Rld. Co. v. Sheldon*, 53 Kan. 169, 35 Pac. 1105.)

It is provided in section 7, chapter 68, General Statutes of 1897 (Gen. Stat. 1899, § 1324), relating to the exercise of the right of eminent domain by railroad companies, that proceedings in condemnation may be commenced by a railway corporation after the road has been constructed, and such course was adopted in this case.   Had the condemnation been had before the sale of the property under the decree and foreclosure, the value of the improvements upon the land would certainly not have entered into the estimate of the damages incurred by the owner, and the mortgagee by no possibility could have laid claim to them or any part thereof.   The improvements made did not become a part of the security under the mortgage, because they did not go to the betterment of the mortgagor's estate.

In the case of *Ritchie v. K. N. & D. Rly. Co.*, 55 Kan. 38, 59, 39 Pac. 725, the railroad company took possession of a piece of land conveyed to it on express conditions which it did not perform. By reason of the breach it was held that the land should revert to the owner. Mr. Justice Allen, in speaking for the court, said :

"If the defendants desire to maintain a railroad across the land and to continue the use thereof for railroad purposes, they should be permitted to retain the land and also the improvements they have constructed thereon on payment of the value of the land computed as of the date of the commencement of this action, with interest since that time, without any charge on account of improvements made by the defendants thereon. (*Cohen v. St. L. Ft. S. & W. Rld. Co.*, 34 Kan. 158, 8 Pac. 138.)"

Upon another ground also property rights in the improvements made by the railroad company upon its right of way, to the extent claimed by the purchaser at the sheriff's sale, must be denied to the latter. The case in the court below proceeded upon the theory that Nyce, by virtue of his sheriff's deed, took such title as the mortgagor (Blackstone) had at the time the mortgage was executed, and this title carried with it the betterments added to the land, put there by the railroad company. If he took title to the extent claimed, then the exclusive estate in and dominion over the land and its improvements were vested in him absolutely, with the resulting power necessarily accompanying such title and dominion to exclude all persons from the land so purchased, and to use and enjoy the same unmolested by the railroad company in any way. As the owner of such an estate he appeared as plaintiff in the court below, and was treated by that tribunal accordingly. If the contention of

defendants in error be sustained, then his power over what he claimed was his own carried with it the right to fence his land, excluding all persons therefrom, including the servants of the railroad company, to stop the running of trains over his property by removing the track and ties, or by any other means.

It must be remembered that a railroad is a public highway. The land over which it runs it holds under a franchise for a particular use conferred upon it by the state for public purposes. A railroad company is endowed with the sovereign power of eminent domain by reason of the benefits which the public at large derive from the operation of the road. It was said by Mr. Justice Allen, in *The State, ex. rel., v. D. C. M. & T. Rly. Co.*, 53 Kan. 377, 378, 36 Pac. 755: "From this (public) use neither the corporation itself, nor any person, company or corporation deriving its title by purchase, either at voluntary or judicial sale, can divert it without the assent of the state." In the case of *Georgia v. The Atlantic & Gulf Railroad Co.*, 3 Woods, 434, Fed. Cas. No. 5351, the question was considered whether an execution creditor of a railroad company might levy upon and sell its depots, freight-houses, etc., in satisfaction of the debt. In denying such right, Mr. Justice Bradley said:

5. Railroad company a public agency.

"It is the means of communication between one part of the country and another. The interest which the public has in it is greater and more important than the interest which the company has in it. It cannot be supposed that the legislature, in authorizing its construction, and granting peculiar franchises for its operation and use, ever intended that execution creditors might levy upon parcels of it, and cut it up into sections, and destroy it as a great public thoroughfare. Such a supposition seems to us preposterous. Suppose a mile of the road should be

levied on and sold, would the purchaser have a right to fence it in and take up the rails and cross-ties, and plant it, and thereby destroy the railroad? Could this be done without contemning the power of the state by which it was created and made a public highway?

"We think not. To sell it in parcels would be to sever an artery of commerce. It would affect the whole state in a vital part. Its public means of inter-communication are essential to the prosperity of the people. They are the most efficient appliances of modern civilization."

In *Justice v. Nesquehoning Valley Railroad Company,* supra, a railroad company was a trespasser and its entry upon land not in conformity to law. In holding that the irregular proceedings did not operate as a dedication to the landowner of the property of the company placed on the land, so as to enable the owner to recover the value of the improvements, the court, through Chief Justice Agnew, said:

"This is not the case of a mere trespass by one having no authority to enter, but of one representing the state herself, clothed with the power of eminent domain, having a right to enter, and to place these materials on the land taken for a public use — materials essential to the very purpose which the state has declared in the grant of the charter. It is true the entry was a trespass, by reason of the omission to do an act required for the security of the citizen, to wit, to make compensation or give security for it. For this injury the citizen is entitled to redress. But this redress cannot extend beyond his injury. It cannot extend to taking the personal chattels of the railroad company. They are not his, and cannot increase his remedy. The injury was to what the landholder had himself, not to what he had not. Then why should the materials laid down for the benefit of the public be treated as dedicated to him?"

There has been an attempt made by counsel to distinguish the case of *Briggs v. C. K. & W. Rld. Co.,* 56

Kan. 526, 43 Pac. 1131, from the case at bar. We are not impressed by their efforts in that direction.

2. **Briggs case overruled.** The facts in the two cases are remarkably similar. The decision in the Briggs case is founded upon the following statement: In 1886 Ault and wife were the owners of a lot upon which they had executed a mortgage. In 1887 they conveyed to the railroad company a right of way over the property. In 1889 a foreclosure suit was commenced by the mortgagee, in which the railroad company was made a party. It answered, setting up a right to occupy a strip of land 300 feet in width by virtue of a deed from the Aults. Judgment was rendered against the Aults for the amount of the mortgage debt and interest, and the whole tract decreed to be sold to pay the same. The cause was then continued as between the mortgagee, plaintiff in the suit, and the railroad company. Thereupon it was decreed that the railroad company be forever barred, foreclosed, enjoined and cut off from claiming any interest or estate in or to the real estate or any part thereof.

An order of sale was issued under which the land outside the right of way strip was first sold for the sum of $50 to James F. Briggs, as administrator, and the strip was then bid off by him for $100. A few days after the execution of the sheriff's deed to Briggs the railroad company made application to the district judge for the appointment of commissioners to condemn a right of way over and across the premises. They were appointed and proceeded in the usual way, allowing $124 for the land occupied and $30 damages to the remainder of the tract. No mention was made of any improvements. Briggs, as administrator and owner of the land, appealed from the award. The trial court allowed the appellant $124 and $30 respectively,

denying him the right to recover the value of `the improvements, amounting to over $2000.

It will be seen that the proceedings had were almost identical with those in the case at bar, and the title of Briggs the same as the title of the defendants in error here. In the opinion in that case Mr. Chief Justice Martin, while asserting that the structures placed upon the right of way were real property, in fact based the decision on the ground that the company had been barred and cut off by the decree in foreclosure from any interest in the lot, which included the structures. He said: "Unless, therefore, we may judicially declare that these buildings and structures were not and are not real estate, we must hold that they passed by the sheriff's deed to the purchaser at his sale." We cannot adhere to the conclusion reached in that decision. While it appears that all the justices concurred, yet on the application for a rehearing Mr. Justice Johnston favored the granting of the same, as appears by the record in the case. We think it should have been declared judicially that the buildings and structures were not real estate, and that the decree in the foreclosure suit did not give to Briggs the right to recover for the improvements. In that case, as in this, the question as to whether the ties, rails and other structures upon the right of way were real estate or personal property was not presented to, considered, or decided by the court in the foreclosure suit. There was no issue upon that question and no adjudication thereon. It cannot be asserted that the materials placed upon the land were changed from personal to real property by the foreclosure proceeding.

In the case at bar, the answer of the railroad company in the foreclosure action averred that it was in

Railroad Co. v. Nyce.

possession of a strip of land 100 feet wide across the land, and also another strip 100 feet wide and 1700 feet long adjoining the right of way obtained for the purpose of depot, side-track, and yard, which land was obtained by deed from Alexander Blackstone, the owner thereof.   There was no reference in the pleadings to the improvements upon the land, other than might be implied from the averments in the answer of the railroad company that it was in possession of the strip of land above mentioned.   The litigation in both foreclosure cases related to the fixing of a mortgage lien on the real estate, and the decrees went no further than that.   If the structures placed upon the property by the railroad company were a part of the real estate before the foreclosure, they were a part of it afterward, for there was nothing in the decrees changing its character.

We are not without authority as to the effect of a judgment in foreclosure upon the rights of the parties.   In the case of *Tex. & Pac. Rly. Co. v. C. S. Hays,* 3 Tex. Ct. App. (Civil Cases), 79, before the commencement of condemnation proceedings the landowner had recovered a judgment against the railway company in an action of ejectment to quiet title to the real estate.   In the condemnation proceeding it was contended that the company was estopped by the judgment from claiming the material composing that part of the railroad on the land in question.   This claim was denied, the court holding that the judgment in ejectment gave to the owner of the land the title to the easement or right of way which the railway company was using and was a trespasser thereon, yet the title to the fixtures and superstructure, although placed upon the land by the company without authority, did not become a part of the land ; that the question as to what were fixtures was not involved in the decision of

the ejectment suit, and that the plea of *res judicata* could not be interposed.

In *Railroad Company v. Willard*, 61 Vt. 134, 17 Atl. 38, certain land, at the time of the construction of a railroad, was encumbered by a mortgage which was afterward foreclosed, the railroad company being a party. The land was sold to Willard. In condemnation proceedings which were then instituted by the railroad company he claimed that the latter was estopped by the judgment in the foreclosure suit from claiming the railroad or the materials thereof. This claim was denied and the improvements held to be personal property. The court said:

"He (the defendant) also claims that the Essex County Company was a trespasser when it entered and constructed its road, and invokes the doctrine of the common law, that structures placed upon land by a trespasser inure to the benefit of the owner of the land.

"But the company was not a trespasser as to either the mortgagor or the mortgagee. Not as to the mortgagor, for he consented to the entry and construction of the road. Not as to the mortgagee, for as to third persons, a mortgagor in possession is regarded as the owner, and the mortgagee as having only a lien or security.

"The effect of the decree of foreclosure was, to cut off the right of redemption and thereby convert defendant's conditional title into an absolute title; but in other respects the rights of the parties were left to be determined by the deed."

In *Kennedy v. The Milwaukee & St. Paul Railway Company, impleaded, etc.*, 22 Wis. 581, 587, the liability of a railway company entering upon mortgaged lands to the mortgagee was considered. The court said:

"When the company obtained the right of way, it could not assume that the mortgage would not be

paid by those under obligation to pay it.   Of course, it incurred the risk that it might ultimately be enforced against the mortgaged premises.   But in the event it should be enforced, it seems to us that all equity requires the company to do is to make compensation by paying the value of the land at the time it was taken, and interest on that amount.   This appears to us more just and equitable than to say that there should be no apportionment of the lien, but that the holder of the mortgage may enforce it to the full amount of his debt by selling the road track, superstructure and fixtures placed upon the land at great expense by the company. . . .   But when the company has purchased the right of way, and neglected to have a mortgage lien discharged, so that it has to make further compensation, then we think it ought only to pay the value when taken, and interest upon that sum.''

In the case of *Northern Central Railway Co. v. Canton Co. of Baltimore*, supra, a railroad was built on the lands of the Canton Company, with a license so to do. The license was revoked and this was followed by two suits, one in ejectment and the other of trespass *quare clausum fregit*.   Judgment was recovered in both actions.   A subsequent action of ejectment was brought for the road-bed, judgment obtained, and under a writ possession was delivered to the plaintiff in the suit.   The rails and other materials which formed a part of the railroad constructed by the appellant were upon the land at the time, and the question arose as to who was the rightful owner of them.   It was held that they were trade fixtures, and, no matter how strongly attached to the soil, were to be treated as personal property.   The court said :

'' If the property replevied did not belong to the appellee at the time the license to the appellant to be upon its land was revoked, it is not perceived how the subsequent suits between them could have changed

the title to it.    This property was not the subject of those suits.    They had reference to the land only upon which it was, and determined no question of its ownership, inasmuch as it does not pass with the realty from the single circumstance of having been affixed to the soil.''    ( See, also, *Winslow v. Bromich*, 54 Kan. 300, 38 Pac. 275.)

It is well settled that where a railroad company commences condemnation proceedings after being in possession of the land sought to be taken for right of way, it is only required to pay for the land, and not for the improvements it has placed thereon.    (*A. T. & S. F. Rld. Co. v. Morgan*, supra; *S. F. etc. R. R. Co. v. Taylor*, 86 Cal. 246, 24 Pac. 1027; *L. N. O. and T. R. R. Co. v. Dickson*, 63 Miss. 380; *C. A. & N. R. R. Co. v. French*, 68 Miss. 22, 8 South. 512; *Greve v. First Div. St. Paul & Pac. R. Co.*, 26 Minn. 66, 1 N. W. 816; *Ritchie v. K. N. & D. Rly. Co.*, supra; *Railroad Company v. Willard*, supra; *Jacksonville T. & K. W. R. Co. v. Adams*, 51 A. & E. R. C. 544, 10 South. 465; *C. & A. R. R. Co. v. Goodwin et al.*, 111 Ill. 273.)

After much consideration, we are convinced that the decision in *Briggs v. C. K. & W. Rld. Co.* is contrary to established principles settled by a great number of well-considered cases involving the same question.    So far as that decision is based upon argument we think it fails in reason, and when sought to be sustained upon precedent lacks authority.    While the doctrine *stare decisis* has been adhered to by this court with much pertinacity, yet we shall not hesitate to incur the accusation of instability by overturning a rule previously adopted when it is contrary to right reason, and the foundation of which is shattered by the pressing weight of opposing authority.

On the second proposition stated at the beginning of this opinion, it is quite clear that the plaintiffs be-

low cannot recover damages to the land outside the right of way by reason of the construction and operation of the railroad. Under the terms of the decree in the foreclosure suit, the half-section outside the strip of land

<div style="float:left">3. Damages
   to adjacent
   property.</div>

deeded for right of way purposes by Blackstone and wife to the railroad company was first sold by the sheriff and bought in by Nyce, and afterward he purchased the right-of-way strip. When he purchased, the road was in operation; embankments had been · thrown up, ties and track laid, the road fully completed, and trains were running over the land. He bought the property with the disadvantage of the railroad upon it. The former owner was the person who might have recovered for the depreciation in value of the property caused by the construction of the railroad, and the right of action was in him. (*C. & E. I. R. R. Co. v. Loeb*, 118 Ill. 203, 8 N. E. 460.) The general rule is stated in the case of *Midland Ry. Co. v. Trevarthen*, 1 Colo. Ct. App. 152, 153, 27 Pac. 1013, as follows:

" It is the law of this state, that a lotowner can only recover for those damages which he has sustained from the construction or operation of a road subsequent to the time when he acquired his title to the property. If the road has been constructed and is in operation at the time he gets title, he is supposed to have taken it *cum onere*, and to have paid the lesser price because of the disadvantages. The damages arising from the construction inure to the holder of the fee, and do not pass by the deed which transfers the title."

In the case of *Indiana, Bloomington and Western Railway Company v. Allen*, 100 Ind. 409, 414, a farm, at the time a railroad was constructed over it, was owned by one Brittingham, who afterward sold and conveyed the same to Allen. The latter then conveyed the farm, except the strip of land within the right of way, and

reserved to himself "all right of action of every kind and nature against the railroad company, and all right to prosecute proceedings for the assessment of damages for the taking and occupancy of said premises or any part thereof by said company for the use of its railroad, and the right to all damages done to said premises by reason of such taking and occupancy," to one Fields. The railway company then instituted condemnation proceedings, in which Allen claimed damages to the land outside the right of way. In denying this claim the court said :

"Upon this testimony, we think it appears clearly that the appellee was not entitled to any damages for the strip of land taken or for the injury done to the remainder of the quarter-section. When he bought the quarter-section the railroad was upon it; it is fair to presume that the existence of such an incumbrance affected the price paid.

"When the strip of land was taken, the quarter-section belonged to Martha E. Brittingham ; the right to recover all the damages then belonged to her ; that right was a chose in action ; it did not pass to appellee by the warranty deed from Mrs. Brittingham and her husband. No assignment is alleged, and the rule is that damages to land remaining uncollected do not pass to a vendee."

See, also, *Sennott v. R. R. Co.*, 59 Vt. 226, 9 Atl. 554; *Livernon v. Railroad*, 109 N. C. 52, 13 S. E. 734; *Dows, Agt., v. Congdon*, 16 How. Pr. 571; *K. P. Rly. Co. v. Mihlman*, 17 Kan. 224.

The defendants in error were entitled to recover only the value of the land occupied by the railroad irrespective of the improvements. In the particular questions of fact answered by the jury, this was found to be $164. The judgment of the court below will be modified, with directions to enter judgment in favor of the defendants in error for that amount. The costs of this court will be divided between the parties.