No. 24,663.

THE UNION PACIFIC RAILROAD COMPANY, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF JEFFERSON COUNTY et al., *Appellees*.

SYLLABUS BY THE COURT.

1. PUBLIC ROAD IMPROVEMENTS—*Assessment of Railway Right of Way and Improvements Thereon.* Improvements on land constituting a railway right of way, such as grading, ballast, rails and ties in place, culverts, signal posts, fences and the like, are properly included in determining the value of railway "real property and improvements thereon," under chapter 246, Laws 1919 and chapter 218, Laws 1921, for the assessment of special benefits to pay the statutory proportion of the cost of a paved road.

2. SAME—*Decision in Former Kansas Case Construed.* The rule announced in *Railroad Co. v. Nyce,* 61 Kan. 394, 59 Pac. 1040, that improvements on a railway right of way, necessary for the operation of the railroad, are to be regarded as trade fixtures and not accessories to the land, does not apply where the dominant estate in the land and also in the improvements thereon is vested in the same owner.

3. SAME—*Paved Road a Benefit to Railroad Property.* Either as a matter of law, or on a showing by evidence, it may be determined that a paved road is a benefit to railway property, for which it may be taxed like other property, so long as there is neither discrimination nor injustice in subjecting the railway property to such taxation.·

4. SAME—*Paved Road Paralleling a Railway.* It cannot be said as a matter of law that because a paved road parallels a railway for a few miles and because of the possibility that motor trucks and omnibuses may use the paved road as competitors of the railway, that the latter can derive no special benefit from the construction of the paved road.

5. SAME—*Neither Discrimination nor Injustice in Method of Assessing Plaintiff's Property.* The facts relating to the valuation of the plaintiff's railway property for the purpose of assessing against it a portion of the cost of a paved road considered, and held to show fairness and due consideration on the part of the defendant taxing officials and to show neither discrimination nor injustice to the railway company.

Appeal from Jefferson district court; MARTIN A. BENDER, judge. Opinion filed July 7, 1923. Affirmed.

*T. M. Lillard, Bruce Hurd,* and *O. B. Eidson,* all of Topeka, for the appellant.

*W. O. Worswick,* of Oskaloosa, for the appellees; *Robert Stone, George T. McDermott, Robert L. Webb,* and *Beryl R. Johnson,* all of Topeka, of counsel.

The opinion of the court was delivered by

DAWSON, J.: This was an action to enjoin the defendant board of county commissioners of Jefferson county from levying a special assessment on plaintiff's railway property to pay for a paved road in a certain benefit road district in which such property was located.

The benefit road district in question is comprised of about 8,000 acres of land in Kaw township, Jefferson county, and includes about 80 acres of property belonging to plaintiff devoted to railway service, and on which there exists 6.10 miles of double main line railway tracks, highly improved, 1.42 miles of sidetrack, and the railway station buildings in the village of Grantville. The paved road parallels the railway.

The defendant board divided the benefit district into six zones, A, B, C, D, E and F, according to the estimated benefits accruing to the respective real properties with their improvements located thereabout. The paved road cost $71,588.28. Seventy-five per cent of the cost is met by general taxation not here concerned, and the remaining 25 per cent of the cost ($17,897.07) was assessed proportionately to the properties classified in the respective zones. The farming lands, with their improvements nearest and most greatly benefited, were put in zone A, and 34 per cent of the special benefit cost (34 per cent of 25 per cent) charged against them. Lands and their improvements somewhat more remote from the paved road were placed in zone B and a less assessment (25.4 per cent of 25 per cent) was charged against them. Similar graded reductions to more remote lands and improvements were imposed in zones C, D

and E. The plaintiff's railway property, although physically located in zone A, was deemed to receive the least benefit from the road improvement and consequently the county board placed it in zone F where the assessment was the smallest (3 per cent of 25 per cent of the cost). Nevertheless, owing to the great value of defendant's rails, ties, grading, ballast, culverts, signals, fences, etc., permanently attached to the real estate of its right of way, even the considerateness of the county board in placing defendant's property in zone F did not and could not prevent the relatively small levy on plaintiff's property from totalling the considerable sum of $1,587. The principal improvements in plaintiff's 80 acres of right of way and their value are:

"Single main track ....................................................... $451,827
"Second main track ...................................................... 54,900
"Side or switch track ................................................... 8,520
"Depot and stockyards at Grantville..................................... 3,210
                                                                        ————
    Total ............................................................. $518,457"

Plaintiff shows that by action of the defendant board, although it owns but ¹⁄₁₀₀th of the land in the district, it must pay about ¹⁄₁₀ of the total amount charged to the benefit district. On the other hand, however, it does appear that plaintiff's land and permanent improvements, if the rails, ties in place, etc., were properly considered as improvements, are fairly valued at and fairly worth ¹⁄₃ as much as all the property in the benefit district, yet the charge against plaintiff's property in only ¹⁄₁₀ of the total amount assessed against the benefit district.

Issues were joined; evidence introduced; special findings of fact were rendered, and judgment entered for the defendant board. Two of the findings of fact read:

"11. That the method adopted by said county board in apportioning said costs of said improvements was by ascertaining the assessed valuation of the land and improvements in the said road benefit district, as fixed for taxation purposes as the actual value thereof, and used said assessed valuation for all property in said district as a basis; and likewise took the assessed valuation of plaintiff's property as fixed by the state tax commission, with rolling stock excluded, and then multiplied said valuation by the per cent fixed for the various zones in which the property might be located, which percentage was determined by said board to be the benefits derived, and in this manner determined the assessment and apportionment of the costs to the plaintiff as well as all others affected thereby.

"12. The county board used its best and honest endeavors to properly apportion the costs of said improved road gaining all the knowledge they could

Railroad Co. v. Jefferson County.

relative thereto and acting fairly and without discrimination, giving to the plaintiff the benefit of the fact that said improvement is not as beneficial to it as to the farmers in said benefit district by assessing the property of the plaintiff relatively located in zones A, B, and C, upon a basis of zone F."

The trial court's controlling conclusion of law reads:

"3. The action of the board of county commissioners of Jefferson county, Kansas, was not arbitrary or capricious in fixing the assessment against the property of the plaintiff and the plaintiff is liable for the payment of such assessment."

Formal assignments of error are presented by plaintiff, which will be noticed so far as necessary; but plaintiff's argument, properly enough, directs our attention to the vital question whether the improvements on the railway right of way, such as grading, ballast, rails, ties, culverts, signal posts, fences, and the like, are properly characterized as improvements on real property within the meaning of the statute, and if so, whether such statute is constitutional.

Hitherto, this court has not had to meet and answer this question squarely. There has been a good deal of paved road construction in this state in recent years, and much consequent litigation concerning it, but the railroads have figured in but little of it, although they have sometimes challenged irregularities in proceedings pertaining thereto. (*Hines v. Barton County,* 106 Kan. 682, 189 Pac. 368, 109 Kan. 783, 202 Pac. 77; *Railway Co. v. Barton County,* 109 Kan. 787, 202 Pac. 78.) This, however, is not because railway property has not been subjected to special assessments for special benefits presumed to inure to their property by reason of such improvements. On one basis or another taxing officials have assessed such special taxes to the railroads supposed to be benefited thereby. And the railroads have simply paid, doubtless adding such special assessments, like other taxes, to their costs of doing business, for which the public in turn has had to pay in increased passenger and freight charges for railway service.

In *Railway Co. v. Mitchell County,* 110 Kan. 582, 201 Pac. 70, this court approved a judgment granting an injunction in favor of a railway company whose right of way lands had been subjected by the taxing board to an assessment of $40 to $57 per acre when adjacent lands were only subjected to a charge of $3.50 to $4 per acre. But in that case the taxing board sought to justify the apparent disparity in values on a fanciful and capricious view that the paved road would specially benefit the railway through enhanced future earnings.

In *Railway Co. v. Labette County,* 113 Kan. 423, recently decided, an obvious and glaring error in the assessment of the railway property to pay for a paved road lay in taking the valuation made by the state tax commission as the basis therefor. For purposes of general taxation, railway property of every sort, land, grading, drainage, ballast, rails and ties in place, culverts, signals, fences, etc., and a proportionate amount of the rolling stock, engines, cars and equipment, also its supplies in storage, its terminals within or without the state, and many other valuable assets, tangible and intangible, are all considered as personal property. (Gen. Stat. 1915, § 11150.) For general taxation purposes, the railway plant is substantially regarded as a unit worth a certain number of millions of dollars, and a proportionate amount of this unit located in Kansas and properly incidental thereto is allocated to and taxed in this state, consistent with fairness and justice as nearly as practicable. Of course, such a basis was entirely unworkable in determining the value of the railway's real property and improvements lying within a road benefit district and subject to special taxation for special benefits accruing thereto, and the judgment in the *Railway Co. v. Labette County* case had to be reversed.

But while all railway property is classed as personal property for general taxation purposes, that is, for state, county, city, township, and school district taxation, nevertheless much of such property is in fact "real property and improvements thereon," as defined in the statute; and where local, special improvements like paved roads are constructed, railway "real property and improvements thereon" must bear its share of the cost of special benefits the same as any other land and improvements. The statutes which chiefly govern this question, in part, read:

"Sec. 5. . . . The remainder of the cost shall be apportioned . . . twenty-five per cent among the several tracts of land within the benefit district designated in the map, according to the benefits accruing to the real property and improvements thereon." (Laws 1919, ch. 246.)

"Sec. 2. . . . And twenty-five per cent among the several tracts of land within the benefit district designated in the map, according to the benefits accruing to the real property and improvements thereon." (Laws 1921, ch. 218.)

The case of *Railroad Co. v. Nyce,* 61 Kan. 394, 59 Pac. 1040, is pressed on our attention. There the purchaser of land at a mort-

gage foreclosure sale claimed the railway improvements as part of the realty. In disallowing this claim, the court ruled:

"Improvements placed upon real estate by a railroad company, necessary to the operation of the road, are' to be regarded as trade fixtures and not accessories of the land to which they are attached." (Syl. ¶ 4.)

This "trade fixtures" rule frequently arises over clashing interests of landlord and tenant and situations analogous thereto. It was a convenient, equitable, and highly necessary rule to apply to the unusual situation presented where the title to the realty of the right of way was in one owner and the railway improvements or fixtures belonged to another owner who had no valid claim to the realty. Otherwise an indispensible segment of a railway track would become the property of 'a successful claimant to a strip of real estate occupied by the railway, and the public convenience in railway travel might be interfered with. That was the potential situation in the *Nyce* case. But where the dominant estate in the land over which the railway is constructed is in the same owner as the railway improvements or fixtures thereon, there is no occasion for the application of the "trade fixtures" rule. Indeed, for railway purposes, the rails, ties, culverts, signals, etc., are trade fixtures only in the same sense as the land on which they are constructed. Ordinarily the only right in the land which inheres in the owner of the railway is the right to use it for railway purposes. (*Harvey v. Railroad Co.*, 111 Kan. 371, 207 Pac. 781.) And, with some unimportant exceptions, a railway corporation can hold land in fee or in special ownership for no other purpose.

It is argued that a paved road is no benefit to railway real estate and its improvements, that a paved highway is a detriment to it because it becomes a competitor of the railway highway. This is a good subject for legislative debate. A paved road leading from outlying territory to a railway station would seem to benefit the railway as much as any other property owner in the community. It would naturally induce traffic to come to the railway and permit it to come with some regularity and without interruption caused by bad roads. In *Railway Co. v. City of Chanute*, 95 Kan. 161, 163, 147 Pac. 836, it was said:

"But it would hardly be just to exempt railway property in the heart of the business district from its share of the burden of these special improvements. . . . The railway is usually the most important business institution in its neighborhood, and the paving of the streets surrounding the 'blocks,

lots and pieces of ground' within which it transacts its business is as much to its advantage as to that of any other taxpayer."

In *Branson v. Bush,* 251 U. S. 182, 191, 64 Law Ed. 215, where the validity of a special assessment against railway property to pay for a road improvement was considered, the assessment was held valid as a special benefit tax on the theory, sustained by evidence, that the improved road would give greater accessibility to the railway and because of "the obvious fact that anything that develops the territory which a railroad serves must necessarily be of benefit to it, and that no agency for such improvement equals that of good roads."

In *Kansas City So. Ry. v. Road Imp. Dist. No. 6,* 256 U. S. 658, 65 Law Ed. 1151, the special assessment was held invalid because of manifest oppression and injustice. The court said:

"The settled general rule is that a state legislature 'may create taxing districts to meet the expense of local improvements, and may fix the basis of taxation without encountering the 14th Amendment unless its action is palpably arbitrary or a plain abuse'. . . .

". . . Classification, of course, is permissible, but we can find no adequate reason for what has been attempted in the present case. . . . Railroad property may not be burdened for local improvements upon a basis so wholly different from that used for ascertaining the contribution demanded of individual owners as necessarily to produce manifest inequality. Equal protection of the law must be extended to all." (pp. 660, 661.)

It is not quite so easy to discern the special benefits accruing to a railway from the construction of a paved road which lies adjacent to the railway and parallels it. That such paved road may take away some local business of the railway through motor trucks and auto omnibuses is likely, yet this particular paved road was clearly shown by evidence to be a benefit to the local community, indeed it was an urgent necessity owing to the particularly bad character of the dirt roads thereabout, and as the paved road specially develops and improves the locality, the railway, as the principal business institution thereabout (*Railway Co. v. City of Chanute,* supra), must necessarily be benefited by it (*Branson v. Bush,* supra). If a ranchman owned 1,000 acres of pasture land devoted to raising horses and mules, in zone A of this benefit road district, he would hardly expect serious consideration to be given to his objection to a special assessment against his ranch on the ground that the paved road was no benefit to his property, that his horses and mules could walk to the railway station to be

shipped to market on any sort of road and in any sort of weather. The ranchman would be shortly answered that whatever public improvements benefited the locality would necessarily benefit his ranch and he would have to pay notwithstanding his plausible argument that because he traveled on horseback and his live stock travelled on hoof he had no use or need for a paved road. It probably could not be denied that a horse and mule ranch located in a highly improved community, one having paved roads and similar public conveniences, would be worth more than if it were located in an undeveloped and backward community. And it seems likewise clear that a railroad located in a community having paved roads and corresponding public improvements is similarly worth more than one in an undeveloped and unimproved territory. The early history of the Union Pacific Railway, this plaintiff, proves this point. Its construction preceded the settlement of Kansas and other western states, and for many years it was in financial straits, its property deteriorated, and it was involved in receiverships and bankruptcy. With settlement and thriving communities, and public improvements including paved roads along its route, there came also financial and material success to the railway along with the communities it served, until now this great steel highway which links the Missouri river with the Pacific ocean enjoys, deservedly, a full share of prosperity and a prestige and dignity seldom equalled among railroads of this country or any other.

Plaintiff argues that it is not the mere physical improvements attached to the real estate of the railway right of way which give so great a value, some $70,000 per mile, to its property in this road district; that its value lies largely in the fact that it is part of a great unit of property covering several states, with the prestige of business success, and with intangible assets of various sorts of great worth. Undoubtedly there is merit in this argument, but it certainly appears that the defendant made generous allowance for this, seeing that it placed this great property in zone F when it was actually located in zone A. What more consideration could have been shown the plaintiff, if its property was to bear any portion of the expense of special benefits? It is only when taxing officers abuse their powers that the courts can interfere with them. (*Branson v. Bush,* supra; *Kansas City So. Ry. v. Road Imp. Dist. No. 6,* supra.) Certainly not in a case where, as here, it is shown that the taxing officers did their best to be conscientious and just.

The record discloses no error and the judgment is affirmed.