NOT DESIGNATED FOR PUBLICATION

No. 117,373

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of:

CORA M. SILLIMAN,
*Appellee*,

and

BRADLEY R. SILLIMAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; ROBERT J. WONNELL, judge. Opinion filed October 6, 2017.
Affirmed.

*Bradley R. Silliman*, appellant pro se.

*Preston A. Drobeck*, of Berkowitz, Cook, Gondring & Driskell, LLC, of Kansas City, Missouri,
for appellee.

Before MCANANY, P.J., STANDRIDGE, J., and WALKER, S.J.

PER CURIAM: This appeal arises out of postdivorce litigation between Cora M.
Silliman and Bradley R. Silliman relating to Bradley's child support obligations. After the
divorce, both parties moved to modify child support and Cora requested reimbursement
from Bradley for certain unpaid expenses. Bradley also asked the district court to impose
sanctions against Cora and to credit his child support obligation based on Cora's alleged
failure to disclose financial information and overstatement of costs she incurred for health
insurance and work-related child care costs. The district court modified child support but

1

denied Bradley's motion for sanctions and credit. The court also ordered Bradley to reimburse Cora for unpaid expenses. On appeal, Bradley argues (1) the district court erred in denying his motion for sanctions and credit and (2) the evidence was insufficient to support the district court's order of reimbursement for unpaid expenses.

FACTS

Bradley and Cora were married on April 1, 2002. They had two children during their marriage, a son (born 2002) and a daughter (born 2007). Cora filed a petition for divorce on June 10, 2010, in Crawford County, Kansas. The district court issued its journal entry and decree of divorce on April 19, 2011. In its decision, the court adopted the parties' agreement for joint legal custody to both parents and primary residential custody to Cora. Given the parties agreement regarding custody, the court ordered Bradley to pay child support. Specifically, the court stated:

> "The Court finds that the income of [Cora] is $57,000.00 and the income of [Bradley] is $86,000.00, that work related child care costs are $1,427.00, (based on what they were last year), and that the health and dental insurance premium is $264.00. The Court will grant a deduction to [Bradley] in the amount of $300.00 for long distance parenting time costs and $211.00 for income tax consideration, making child support due and payable from [Bradley] to [Cora] in the amount of $1,263.00, commencing February 15, 2011 and continuing on the same day of the month thereafter until further order of the court."

The district court also ordered that all of the children's uncovered medical care and other expenses would be divided between the parties, with Cora paying 40% and Bradley paying 60%.

In June 2012, the case was transferred from Crawford County to Johnson County after Cora and the children moved there. In February 2013, Bradley's monthly child

2

support was modified to $1,249. In December 2013, the district court approved and adopted an updated stipulated parenting plan submitted by the parties.

On April 18, 2016, Bradley filed a motion to modify child support and to amend the December 2013 stipulated parenting plan. On April 28, 2016, Cora filed a motion to dismiss Bradley's motion and filed her own motion to modify child support and parenting time and a motion for reimbursement of the children's expenses.

On September 8, 2016, Bradley filed a motion for sanctions against Cora and a request for credit. In support of his motion, Bradley alleged Cora concealed financial information, overstated health insurance premiums, and exaggerated work-related child care costs. Although this motion is not included in the record on appeal, it appears that Bradley sought relief under § V.B.2. of the Kansas Child Support Guidelines (KCSG), which gives a district court authority to impose sanctions against a parent who fails to disclose a material change of financial circumstances and to assess a credit on the child support worksheet in favor of the other parent. See KCSG § V.B.2. (2017 Kan. S. Ct. R. 103).

On September 23, 2016, the district court held a hearing on the motions. Prior to receiving evidence, the court denied Cora's motion to dismiss Bradley's motion to modify/amend. The court also denied Bradley's request for sanctions, ruling that the claims were not properly pled as fraud and were otherwise untimely. The court explained that it would, however, consider Bradley's request for credit at the end of the hearing. Thereafter, the parties presented evidence on several matters. Relevant to the issues argued on appeal, Bradley alleged Cora had misrepresented or failed to report her health insurance costs, child care expenses, and increased income. Bradley requested credit for his alleged overpayment of child support since 2013 based on Cora's misrepresentations and omissions. Cora, for her part, requested the court order Bradley to reimburse her for

3

his share of the unpaid medical, educational, and extracurricular expenses, as required in the divorce decree.

After hearing testimony and receiving evidence, the district court issued its ruling from the bench. The court found a material change of circumstances warranted a change to child support based on: the ages of the children, each party's significant increase in income, a change in Bradley's transportation expenses, a decrease in child care expenses, and a change in the cost and reimbursement to Cora for the children's health insurance. Utilizing the parties' 2015 W-2 forms, the district court deemed Bradley's income to be $99,768 and Cora's income to be $107,508. The court awarded Cora a $165 credit for health insurance and a $431 credit for work-related child care costs. The court denied Bradley's request for a credit under § V.B.2. of the KCSG and ordered him to pay monthly child support in the amount of $1,273, effective May 1, 2016. Finally, the court granted Cora's request to have Bradley reimburse her for his share of the unpaid medical, educational, and extracurricular expenses and entered a $5,008.10 judgment against Bradley for this reimbursement.

On October 13, 2016, Cora filed a motion to reopen evidence on the issue of cost to provide health benefits for the children. Bradley moved to dismiss Cora's motion and filed a motion to amend the district court's judgment by decreasing Cora's income from $107,508 to $98,763 and to eliminate Cora's credit for paying the children's health insurance premiums. On November 22, 2016, the district court entered a written order disposing of both motions. The court denied Cora's motion to reopen evidence and granted Bradley's motion to amend in part. Specifically, the court held that it had incorrectly determined Cora's income to be $107,508 because this number included "E-cash," federal tax-free benefit dollars provided by her employer as a credit for payment of health insurance premiums. After subtracting the E-cash, the court determined that Cora's income was $98,763.23. Given its decision that it was Cora's employer, and not Cora, who was paying for the children's health insurance premiums, the court determined that it

4

also had incorrectly given Cora a credit for payment of health insurance. As a result, the court calculated Bradley's new monthly child support amount as $1,274, effective June 1, 2016. Bradley timely appeals.

ANALYSIS

Bradley raises several arguments on appeal, which can be consolidated into two issues. First, he argues the district court erred by denying his motion for sanctions and credit. Second, he contends the evidence was insufficient to support the district court's order to reimburse Cora $5,008.10 for unpaid medical, educational, and extracurricular expenses. We address each of these allegations in turn.

1. *Sanctions and credit*

In this first issue, Bradley claims the district court should have either imposed sanctions against Cora or awarded him a credit on the child support worksheet based on his allegation that Cora misrepresented health care benefits she received, overstated work-related child care expenses she incurred, and concealed a substantial increase in her income. Bradley contends that any credit the court decides to award should be retroactive to April 1, 2012, the date the KCSG were modified to permit the district court to award sanctions and credit based on a parent's failure to disclose a material change of circumstances.

As a preliminary matter, we note that Bradley's motion for sanctions and credit is not included in the record on appeal. The burden is on the party making a claim to designate a record to support that claim. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644-45, 294 P.3d 287 (2013). Without Bradley's motion, we cannot know the specific arguments he made or the grounds upon which his request for relief was based. Given the transcription of the arguments presented by Bradley at the hearing

5

and the district court's rulings, however, we will attempt to resolve the claim of error presented by Bradley on appeal.

Parental child support obligations in a divorce action are governed by statute and guidelines established by the Kansas Supreme Court. See K.S.A. 2016 Supp. 23-3001 et seq. (governing court's obligation and authority to make provisions for child support); K.S.A. 2016 Supp. 20-165 (mandating Supreme Court to adopt rules establishing child support guidelines); KCSG, Administrative Order No. 287 (2017 Kan. S. Ct. R. 79-164). The applicable standard of review depends on the question presented. A district court's award of child support is generally reviewed for abuse of discretion but interpretation and application of the KCSG are questions of law subject to unlimited review. *In re Marriage of Skoczek*, 51 Kan. App. 2d 606, 607, 351 P.3d 1287 (2015).

Modification of child support is governed by K.S.A. 2016 Supp. 23-3005. Where, as here, modification is sought within three years of the original order or a modification of that order, the party seeking modification must demonstrate a material change in circumstances in order to have his or her request considered. K.S.A. 2016 Supp. 23-3005(a). With regard to a material change in circumstances, the guidelines have provided since 1994 that "[a] parent shall notify the other parent of any change of financial circumstances including, but not necessarily limited to, income, work-related child care costs, and health insurance premiums which, if changed, could constitute a material change of circumstances." KCSG § V.B.1. (2017 Kan. S. Ct. R. 103); see Kansas Supreme Court Administrative Order No. 90, Guidelines § VI.A. (1994 Kan. Ct. R. Annot. 100). But until the April 2012 amendments, the guidelines did not provide the court with authority to sanction one parent for the other parent's failure to disclose a material change of circumstances.

6

In April 2012, the Kansas Supreme Court adopted Administrative Order No. 261, which added § V.B.2. to the KCSG. (2013 Kan. Ct. R. Annot. 144). This section, now set forth in Administrative Order No. 287 (effective September 1, 2016), provides:

"V.B.2. Duty to Notify

"In the event of a failure to disclose a material change of circumstances, such as the understatement, overstatement, or concealment of financial information, as a result of such breach of duty, the court may determine the dollar value of a party's failure to disclose, and assess the amount in the form of a credit on the Line F.3 child support amount or an amount in addition to Line F.3 child support amount for a determinate amount of time. The court may also adopt other sanctions.

"Upon receipt of written request for financial information, a parent shall have thirty days within which to provide the requested information in writing to the other parent. Refusal to provide the requested information may make the non-complying parent responsible for the costs and expenses, including attorney fees, incurred in obtaining the requested information." (2017 Kan. S. Ct. R. 103-04).

Before the evidentiary portion of the modification hearing even started, the district court denied Bradley's request to impose sanctions against Cora, stating that the claims were not properly pled as fraud and were otherwise untimely. The court advised the parties, however, that the court would consider Bradley's request to award him credit on the child support worksheet based on Cora's alleged misrepresentations after the court heard the evidence presented at the hearing. Given Bradley's failure to include his motion in the record, we presume the district court's denial on these grounds was proper. See *In re Marriage of Callaghan*, 19 Kan. App. 2d 335, 338, 869 P.2d 240 (1994) ("In the absence of an adequate record, the appellate court presumes the action of the trial court was proper.").

After hearing testimony and argument, the district court judge ultimately declined to award Bradley credit under § V.B.2., reasoning:

"[T]here were multiple prior events that both parties could have sought a motion for modification and did not. But more specifically as it relates to [V.B.2.], I was not presented any evidence as it relates to a specific request and denial that would trigger that section.

"I will also note that the guidelines appear to indicate a duty to notify. There is a duty to notify the other parent, not a duty to notify the Court of a substantial change."

A district court's decision on whether to assess a credit or adopt a sanction under § V.B.2. for a parent's failure to disclose a material change of circumstances is discretionary. See *In re Marriage of Johnson*, 50 Kan. App. 2d 687, 694, 336 P.3d 330 (2014); see also KCSG § V.B.2. (in the event of a failure to disclose a material change of circumstances, "the court *may* determine the dollar value of a party's failure to disclose, and assess the amount in the form of a credit . . . . The court *may* also adopt other sanctions." [Emphasis added.]). A judicial action constitutes an abuse of discretion if the action is: (1) arbitrary, fanciful, or unreasonable, i.e., no reasonable person would take the view adopted by the trial court; (2) based on an error of law; or (3) based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

In his brief on appeal, Bradley argues the district court's decision to deny his motion for sanctions or credit on the child support worksheet was an abuse of discretion because it was based on an error of law and an error of fact. With regard to the error of law, Bradley construes the language in the court's ruling as an indication that the court erroneously concluded as a matter of law that it was limited to awarding a credit or sanctions only when one parent fails to respond within 30 days to a specific request for financial information from the other parent. With regard to the error of fact, Bradley challenges the court's finding of insufficient evidence to establish Cora misrepresented health care benefits she received, overstated work-related child care expenses she incurred, and concealed a substantial increase in her income.

In explaining why it decided not to award Bradley credit, the court discussed the evidence as it related to the two separate provisions of KCSG § V.B.2. In the first part of its explanation, the court found insufficient evidence of a specific request or a denial in response to a specific request, which was necessary to trigger § V.B.2. The court's use of the words "request" and "denial" establish that the court's decision was grounded in the second paragraph of § V.B.2., which provides the court with discretion to award costs and expenses, including attorney fees, incurred by a parent who has sent a written request for financial information when the other parent refuses to respond within 30 days of that written request. To the extent Bradley was seeking costs, expenses, and attorney fees under that paragraph, the court found nothing in the record to establish that either party made such a request. Bradley does not challenge the district court's finding in this regard, so it appears to be an undisputed fact. In the absence of evidence to show Bradley submitted a written request for financial information and Cora refused to provide the information requested, we agree with the district court's legal conclusion that the authority of the court to award costs and expenses was never triggered. We are not persuaded by Bradley's argument that the court erroneously construed § V.B.2 to require a written request for financial information before it was permitted to assess credit or sanctions under § V.B.2.

In the second part of its explanation, the court found § V.B.2. imposes a duty on one parent to disclose what may be a material change of circumstances to the other parent, regardless of whether the other parent has submitted a written request for the information. The court noted that this duty requires disclosure to the other parent, not to the court. The language used by the court in this explanation establishes that the court's decision to deny Bradley's request for sanctions or a credit was grounded in the first paragraph of § V.B.2. This paragraph provides the court with discretion to give credit on the child support worksheet to one parent when the other parent fails to disclose a material change of circumstances. In addition to providing the court with discretion to give a credit, this paragraph also provides the court with discretion to impose other

9

sanctions on a parent who has failed to disclose what may be a material change of circumstances. To the extent Bradley was seeking sanctions or a credit on the child support worksheet based on his allegation that Cora misrepresented health care benefits she received, overstated work-related child care expenses she incurred, and concealed a substantial increase in her income, the court found Bradley failed to prove the truth of these allegations. Based on Bradley's failure in this regard, the court ultimately determined Cora did not violate her duty to disclose under § V.B.2. and therefore Bradley was not entitled to a credit on the child support worksheet.

But Bradley argues the district court's determination is grounded in an error of fact. Specifically, Bradley claims the evidence he presented is more than sufficient to prove that Cora overstated, concealed, or otherwise failed to disclose material financial changes of circumstance relating to her health care costs, work-related child care costs, and income. With regard to Bradley's claim that the court abused its discretion by basing its decision on an erroneous finding of fact, we review the court's findings for substantial competent evidence. See *City of Wichita v. Denton*, 296 Kan. 244, 255, 294 P.3d 207 (2013) (A district court's factual findings are reviewed for substantial competent evidence.).

a. *Health care costs*

In Cora's original domestic relations affidavit, she listed her income to include E-cash of $1,241.37 per month and listed $1,237.80 in costs for health, dental, and vision insurance. Cora later amended her domestic relations affidavit to reflect an annual gross income of $71,943.65 and she deducted $10,344.20 in E-cash from this amount. Cora did not include any deduction for health, dental, and vision insurance, but she included a note stating: "E Cash is reflected as revenue or income on the Petitioner's pay stub, however, it is essentially equal to the health insurance deductions and therefore I have not included

either in this calculation." On Cora's 2014 and 2015 W-2 forms, the total E-cash amounts were included in her gross income but deducted from her wages pretax.

At the hearing, Cora testified that she had worked for Ericson for approximately seven years. Cora stated that during her employment with Ericson, she received income from the company in an amount equal to the cost of her medical and dental insurance premiums and the premiums were taken out of her check before taxes. Cora testified that E-cash was included in her gross income on her pay stubs. Based on these facts, Cora believed that the court could either include both the E-cash and a health insurance credit in the child support worksheet or exclude both. Cora stated that this had been her position since appearing before the hearing officer in 2013. In determining the amount of child support, the district court initially decided to include the E-cash as part of Cora's gross income and then provide Cora a credit for paying health insurance premiums. At Bradley's request in a posthearing motion, however, the court later amended its decision, this time excluding the E-cash from Cora's gross income and eliminating Cora's credit for paying the health insurance premiums.

As the district court found, there is nothing in the record to suggest that Cora ever misled Bradley or the court about the nature of her health insurance benefits. Given the facts of this particular case, whether Cora properly claimed a credit for paying health insurance premiums is a complicated legal issue that involves not only interpretation of the KCSG but the Kansas and federal tax codes as well. The fact that the court changed its initial ruling on this issue reflects its complexity. Cora's position on the issue, however, has remained the same since she filed original and amended domestic relations affidavit: if the E-cash is included in her gross income, she is entitled to a credit for paying the health insurance premiums but if the E-cash is not included in her gross income, she is not entitled to that credit. Based on Cora's representations, there simply is no evidence that Cora concealed or overstated financial information related to the children's health insurance premiums.

11

b. *Child care costs*

At the hearing, Bradley questioned Cora about her work-related child care expenses, specifically pointing out that the cost of after-school child care had decreased since 2013. Cora agreed that—during the school year—she paid the cost of YMCA after-school care only for their youngest child because their oldest child took the bus from school and stayed home by himself until she arrived home from work. But Cora also testified that during the summers, she paid a nanny to take care of both children during the day while she was at work. Cora explained that she added the school year and summer child care expenses together and divided the total by 12 to get an average monthly amount of child-care related expenses and used that number on the child support worksheet. Cora also explained that the expense for work-related child care listed on her child support worksheet differed from the amount listed on her tax forms because expenses for the nanny were not included on the tax forms. During her testimony, Cora conceded that the current total expense of the YMCA after-school care and the summer nanny might be lower than the 2013 total expense of child care she used when filling out the 2013 child support worksheet. When Bradley asked why Cora had not reported the decreased child care costs to the court, Cora stated that she believed Bradley was aware of the child care fees. Bradley, in turn, responded that it was not his responsibility to report this to the court.

The KCSG require a parent *to notify the other parent* of any material change of financial circumstances, including a material change in the cost of work-related child care. KCSG § V.B.1. The KCSG does not impose a duty upon either parent to notify the court of a material change of financial circumstances. Although there is evidence that Cora's work-related child care costs may have decreased since the 2013 child support order, there is no evidence to show that Cora concealed or overstated these costs. In fact, Bradley's own statements reflect that he was aware the child care costs had decreased,

12

which strongly suggests that Cora complied with her duty under the KCSG to notify Bradley of this change.

### c. *Income*

At the hearing, Bradley elicited testimony from Cora that her income had increased since 2013. When it was Bradley's turn testify, he stated his belief that Cora's salary had "changed substantially" since 2013 and complained that Cora had not notified the court of this "substantial change of circumstances." As noted in the previous section, however, the KCSG requires a parent to notify the other parent of any material change of financial circumstances; there is no requirement to notify the court of such a change. Again, Bradley's own testimony reflects that he already knew Cora's salary had increased. There is simply no evidence to suggest that Cora concealed, understated, or otherwise failed to disclose this information to Bradley, as required by the KCSG. For this reason, we find no merit to Bradley's claim that the district court abused its discretion based on an error of fact related to Cora's alleged failure to disclose a material change of circumstances.

For the reasons stated above, we find the district court did not abuse its discretion in finding that Cora complied with KCSG notification requirements related to material changes in income, work-related child care costs, and health insurance premiums. Although there is substantial competent evidence in the record to support the district court's finding, we note that the district court has discretion to decline assessing a credit or adopting a sanction even if a party does fail to disclose as required under KCSG § V.B.1. *In re Marriage of Johnson*, 50 Kan. App. 2d at 694; see KCSG § V.B.2.

13

2. *Reimbursement order*

Bradley argues the district court erred by ordering him to reimburse Cora for $5,008.10 in unpaid medical, educational, and extracurricular expenses. Specifically, Bradley claims the evidence was insufficient to support the award because Cora failed to present a receipt for each reported expense to him or to the court, as required by the parties' stipulated parenting plan.

When a district court's decision is challenged for insufficiency of evidence or as being contrary to the evidence, an appellate court does not reweigh the evidence or pass on the credibility of the witnesses. If the evidence, when considered in the light most favorable to the prevailing party, supports the decision, the decision will not be disturbed on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 407, 266 P.3d 516 (2011).

The parties' stipulated parenting plan provided for reimbursement of "uncovered medical care and Educational, extracurricular activities, and other Expenses." Specifically, the parenting plan stated:

> "The parent incurring a reimbursable expense shall notify the other, **in writing or electronic mail**, of the expense, and shall furnish a copy of the receipt or bill within thirty days of receipt of such bill. The other parent then has thirty days from receipt of said bill to reimburse the parent for their portion of the bill. Any expenses not exchanged within thirty (30) days shall be deemed waived by the party incurring such expense."

At the hearing, Cora introduced into evidence spreadsheets of all expenses for which she requested reimbursement, including back-up receipts and e-mails she had sent to Bradley. Cora testified that she believed she had submitted receipts for all the expenses to Bradley, but that not all the e-mails she sent to him were included as exhibits. Bradley admitted that he was responsible for some of the unpaid medical expenses, but claimed that Cora either did not submit receipts to him or did not timely submit receipts for all of

14

the other claimed expenses. In awarding Cora $5,008.10, the district court explained that it relied on the sum total of the receipts to support the award of medical expenses and accepted Cora's testimony as credible evidence to support the award of educational and extracurricular expenses.

Bradley claims the court's ruling misinterpreted the parties' stipulated parenting plan by not requiring receipts for each and every expense for which Cora sought reimbursement, which resulted in a significant overpayment on his part. But the parenting plan simply required the parent who incurred the expense to notify the other parent, in writing or by electronic mail, of the expense and to provide a copy of the receipt or bill within 30 days of receipt of the bill. Contrary to Bradley's argument, Cora was not required to submit these receipts to the court. Cora testified that she had notified Bradley of the expenses and that she had submitted the receipts to him, and the district court chose to accept this testimony as credible evidence of the expense. Bradley's argument invites this court to reweigh the evidence, which we cannot do. See *Wolfe Electric, Inc.*, 293 Kan. at 407. The evidence, when considered in the light most favorable to Cora, was sufficient to support the district court's reimbursement award of $5,008.10.

3. *Attorney fees*

Cora filed a timely motion with our court asking us to order Bradley to pay the attorney fees she incurred in responding to the claims Bradley raised on appeal. Supreme Court Rule 7.07(b)(2) (2017 Kan. S. Ct. R. 50) (motion for attorney fees must be filed within 14 days of oral argument). Under this rule, we may award attorney fees for services on appeal in a case where the district court had the authority to award attorney fees or in situations where we find an appeal has been taken frivolously or only for the purpose of harassment or delay. Rule 7.07(b)(1), (c). In a family law case, the district court may award attorney fees to either party "as justice and equity require." K.S.A. 2016 Supp. 23-2715.

15

According to the affidavit and billing statement that Cora submitted with her motion, her lawyer billed $3,980 working on this appeal, at a rate of $225 per hour. We have carefully examined Cora's motion and the attached affidavit, as well as Bradley's brief in opposition to Cora's motion, in light of the eight factors listed in the Kansas Rules of Professional Responsibility, Rule 1.5 (2017 Kan. S. Ct. R. 292) for determining reasonable attorney fees. Based on these factors, we find an award of attorney fees to be proper and deem the requested amount of attorney fees to be reasonable. Accordingly, Cora's motion for appellate attorney fees is granted.

Judgment affirmed and motion for appellate attorney fees granted.